# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5870 | **DATE** | 7/31/2001 |
| **CASE TITLE** | Profile Products vs. Soil Management | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment and its motion in limine (27-1 and 27-2) are granted. Plaintiff's motion for reimbursement of expert discovery fees (39-1) is also granted. Plaintiff's motion to strike (41) is terminated as moot. Defendant's motion to bar (35-1) is granted. Pretrial order will be due by 10/1/01; and response to any motions in limine by 10/15/01. Pretrial conference set for 11/16/01 at 4:00 p.m. Trial set for 1/7/02 at 9:30 a.m. Enter Memorandum Opinion and Order. This case is referred to Magistrate Judge Ashman for settlement conference. Ruling set for 8/3/01 is vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG - 1 2001 | 49 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 7/31/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MPJ | courtroom deputy's initials | FILED FOR DOCKETING 01 JUL 31 PM 4: 38 Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

PROFILE PRODUCTS, LLC f/k/a )
AIMCOR CONSUMER PRODUCTS LLC., )
                           )
        Plaintiff, )
                           )    No. 99 C 5870
     v. )
                           )
SOIL MANAGEMENT TECHNOLOGIES, )
INC, )
                           )
        Defendant. )

**DOCKETED**

AUG - 1 2001

### MEMORANDUM OPINION AND ORDER

Profile Products ("Profile") manufactures inorganic soil "amendments" used in the construction and maintenance of golf greens. In 1998, Profile (then known as AIMCOR) entered into an agreement (the "Agreement") with Soil Management Technologies ("SMT"). Under the agreement, SMT was to act as a sales representative for Profile for soil amendments in the new construction market. Some of these soil amendments were used in the "$Soi_2lAire^{TM}$ System," which was designed to "create new performance driven specifications for the construction of new golf greens." Under the Agreement, the mark and name "$Soi_2lAire^{TM}$ System" was jointly owned, and the parties had certain obligations in relation to marketing the $Soi_2lAire^{TM}$ System, which are in dispute here.

On August 15, 1999, Profile wrote to SMT to terminate the Agreement under its "just cause" provision. Profile then filed this

diversity lawsuit,[1] seeking a declaration that its termination of the Agreement was valid, and monetary damages for several breaches of contract. SMT counterclaimed, seeking declaratory judgment that the contract was wrongly terminated, and asserting several tort and contract claims. Profile moves for summary judgment on some of SMT's counterclaims, as well as on its own declaratory judgment claim, and to limit evidence of damages. SMT moves to exclude evidence of its performance in prior contracts. I grant these motions, as explained in the following, and I grant Profile's motion for reimbursement of expert witness preparation fees, but not at the unreasonable rate requested.

## I.

Summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P 56(c). All inferences are taken in the light most favorable to the nonmoving party. *Id.* To survive the motion, the party opposing it "must produce sufficient evidence that would reasonably permit the finder of fact to find in [its] favor on [a] material question of fact." *Hillman v. Resolution Trust Corp.*, 66 F.3d 141, 144 (7th Cir. 1995). This is a diversity case to be decided under Illinois substantive law.

---

[1] Profile is a Delaware corporation with its principal place of business in Illinois. SMT is a Colorado corporation with its its principal place of business located in that state.

First, the declaratory judgment counts (Profile's Count I, SMT's Counterclaim I) address whether Profile validly terminated the Agreement. This issue raises a question about whether the Agreement can possibly be, as it purports, terminable only for cause. Section 2(a) provides that the period of the Agreement shall continue to September 30, 2000, and be automatically renewed for one year, but that "either party shall have the right to terminate this agreement at any time, for Just Cause (as defined below)." Section 2(b) says that "Just Cause" means "material failure or breach, . . . after written notice providing not less than . . . 60 days opportunity to cure." Profile claims that this language meant the contract was terminable at will because it was a contract of indefinite duration, so terminable at will under Illinois law. *See Dulduao v. St. Mary of Nazareth Hosp. Ctr,* 505 N.E.2d 314, 318 (Ill. 1987). Because "[f]orever is a long time," *Jespersen v. Minnesota Mining and Mfg. Co.,* 700 N.E.2d 1014, 1015 (Ill. 1998), "[p]erpetual contracts are 'not favored.'" *Adkisson v. Ozment,* 370 N.E.2d 594, 597 (Ill. App. Ct. 1977); 1 R. Lord, *Williston on Contracts* § 4:19, at 442-44 (4th ed. 1990).

Normally, a contract terminable for cause is the opposite of one that is terminable at will, *see, e.g., Nat'l Material Trading v. Emilian,* No. 92 C 2213, 1993 WL 22697, at *1 (N.D. Ill. Jan. 29, 1993) (employment context). "[A]n agreement without a fixed duration but which provides that it is terminable only for cause .

-3-

. . . is in one sense of indefinite duration, but is nonetheless terminable only upon the occurrence of the specified event *and not at will.*" *Jespersen,* 700 N.E.2d at 1016 (emphasis added). The Agreement says on its face that it is terminable by either party "for Just Cause," but defines "just cause" as a material breach uncured after 60 days. *Jesperson* holds that "the delineation of instances of material breach in the context of a permissive and nonexclusive termination provision will not create a contract terminable for cause." *Id.* An "exclusive" termination provision gives a limited set of conditions that uniquely define when a contract is terminable. *Id.* The Agreement is exclusive: just cause is defined in one particular manner (breach uncured after 60 days), and there is no suggestion in this case that "those grounds are not the sole or exclusive basis for termination." *Id.*

However, Illinois law is clear that "permissiveness" rules out termination for cause. This is because material breach cannot be the sort of specified event that will support a just cause rather than an at will termination. First, it adds nothing to "specify" that the contract is terminable for material breach, because "any contract is terminable upon the occurrence of a material breach. [A]n agreement which is otherwise indefinite in duration and terminable at will cannot be converted into an agreement of definite duration by the mere transcription of such universals within the text of the contract." *Id.* at 1016-1017 (citing *Trient*

-4-

*Partners I Ltd. v. Blockbuster Entertainment Corp.*, 83 F.3d 704, 709 (5th Cir. 1996)(applying Texas law)).

I am not sure what termination "for cause" would have to be to avoid this problem, except that it would have to be more specific than the broad generic classification of material breach. Perhaps a listing of specific terminating events, or kinds of terminating events would be required. *See, e.g. Stein v. Isse Koch and Co.,* 112 N.E.2d 491, 493 (Ill. App. Ct. 1953) (terminable event was plaintiff's discharge from the army); *Donahue v. Rockford Showcase & Fixture Co.,* 230 N.E.2d 278, 381 (Ill. App. Ct. 1967) (terminable event was drop below a certain level in value of shipments generated by salesman's orders in any one year); *In the Matter of Commodity Merchants, Inc.,* 538 F.2d 1260, 1263 (7th Cir. 1976) (termination point was "unsatisfactory financial condition" of a trader's customer). Be that as it may, the Illinois Supreme Court could not be clearer that "material breach" is not "cause" that will avoid construing a contract as terminable at will.

Second, for a contract to be of definite duration, "[t]he event upon which [it] will terminate must be an 'objective event,'" *R.J.N. Corp. v. Connelly Food Prods.,* 529 N.E.2d 1184, 1187 (Ill. App. Ct. 1988), independent of the will of the parties. If a party was in "complete control" or "could institute a termination-triggering event, then the contract should be considered terminable at will." *Yale Security, Inc. v. Freedman Sales, Ltd.,* No. 96 C

-5-

6501, 1997 WL 51428, at *3 (N.D. Ill. Feb. 3, 1997) (Coar, J.).
Here, each party was in complete control and could institute a
termination-triggering event by causing a material breach. In
contrast, the events in *Stein, Donhaue, and Commodity Merchants*
above were at least partially "objective." *See Peters v. Health and
Hospitals Governing Comm'n,* 415 N.E.2d 653, 656 (Ill. App. Ct.
1980), *rev'd on other grounds by* 430 N.E.2d 1128 (Ill. 1981).

SMT argues, first, that the "complete language" of the
termination agreement provides the necessary definiteness, because
section 2(b) states that the terminating event is a material breach
*that is uncured after 60 days.* However, the specification of a 60
day period adds nothing substantive, and does not make the material
breach an "objective event." SMT was still in complete control and
could trigger the terminating breach at will.

Second, SMT contends that the agreement is ambiguous, and its
meaning is therefore to be determined by the trier of fact. But for
a court to find ambiguity, "the express language of the contract
itself [must be] fairly susceptible to more than one reasonable
reading." *Bourke v. Dun & Bradstreet,* 159 F.3d 1032, 1037 (7th Cir.
1998). SMT remarks on the parties' substantial difference of
opinion about the meaning of the termination clause, but "'a
contract is not rendered ambiguous simply because the parties do
not agree on the meaning of its terms.'" *Id.* (citation omitted).
Here, SMT does not show that there is a reading supporting its

-6-

preferred outcome to which the contract is fairly susceptible. The contract is inartfully drafted, but this provision is not ambiguous. The agreement was terminable at will by operation of the law; no material breach was required; and it was properly terminated by Profile's letter of August 15, 1999. SMT is not entitled to any contract damages accruing after that date.

II.

SMT's Third Counterclaim avers that, by the terms of the Agreement, Profile was to "financially support SMT's marketing of Soi$_2$lAire™ System," but failed to do so. SMT relies on Section 4(d) of the Agreement, which says that Profile "shall continue to support the sales of Products through literature, advertising, and trade shows in accord with past practices." The "Products" are described in the contract as Profile's golf course products. SMT argues that this obligated Profile to pay for SMT's marketing the Soi$_2$lAire™ System.

Profile contends that the "in accordance with past practices" clause of section 4(d) means it had no obligation because its past practices had never involved supporting the Soi$_2$lAire™ System. But this reading would frustrate the intent of the parties, whose agreement covered Profile's products, including the jointly owned Soi$_2$lAire™ System, and so to read "in accordance with past practices" to exclude obligations with regard to new products would be to read those provisions out of the contract. *See Owens v.*

-7-

*McDermott, Will & Emery,* 736 N.E.2d 145, 150 (Ill. App. Ct. 2000) ("Contracts must be interpreted as a whole[,] giving meaning and effect to each provision.").

However, SMT fails to bring forward evidence to support SMT's counterclaim III. SMT argues that Profile breached this provision by withholding financial support "for the implementation of the Soi$_2$lAire™ System marketing too," But its statement of material facts (¶ 15) and supporting affidavit says only that Profile violated this provision by contacting certain SMT accounts. It would seem obvious that contacts with accounts are not the same thing as supporting or failing to support "the sale of products through literature, advertising, and trade shows." Summary judgment for Profile is in order on this count.

### III.

In its Counterclaim VI, SMT accuses Profile of breaching the Agreement's noncompetition provision, § 7(c), prohibiting Profile from soliciting any of SMT's accounts for six months after termination of the Agreement. SMT offers the affidavit of Roy Parker, one of SMT's two shareholders, to the effect that Profile "contacted" some of its accounts. But the Agreement does not define "contact" as a form of "solicitation," *cf. Peterson-Jorwic Group, Inc. v. Pecora,* 586 N.E.2d 676, 677 (Ill. App. Ct. 1991) (agreement banned solicitation *or contact* with former customers), and not all contact is solicitation. Summary judgment for Profile is granted on

this counterclaim.

## IV.

SMT, in its Counterclaim VIII, requests an equitable accounting, *see People ex rel. Hartigan v. Candy Club*, 501 N.E.2d 188, 190 (Ill. App. Ct. 1986), because, it says, Profile, which has the relevant records relating to sales that SMT and Profile made under the Agreement, refused to conduct an inquiry into additional commissions that may be owing to SMT. As I have explained elsewhere, "[a] claim for an equitable accounting may be maintained only in 'the absence of an adequate remedy at law.' If an adequate remedy at law exists . . . , the party seeking an equitable accounting must demonstrate that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can unravel them." *Oil Express Nat'l, Inc. v. Latos,* 966 F. Supp. 650, 652 (N.D. Ill. 1997) (citations omitted). SMT's argument that it lacks an adequate remedy at law is that it needs additional discovery. That is not what is meant by the term. *See Rice & Adams Corp. v. Lathrop,* 278 U.S. 509, 513 (1929) (Where defendant sought accounting of profits, Court held that "[n]o ground for equitable jurisdiction properly could be alleged, . . . and the bill was merely for an accounting of profits and damages, the remedy at law for which was complete."). Moreover, "[t]he need to examine [a party's] business records is not a sufficient justification for an equitable accounting." *Oil Express Nat'l, Inc.,* 966 F. Supp. at

652. What SMT really wants is a motion to compel under Fed. R. Civ. P. 37, but it does not make such a motion. Summary judgment is granted for Profile on this counterclaim.

V.

In Counterclaim X, SMT argues that Profile tortiously interfered with its prospective economic advantage with a number of potential clients. Under Illinois law, SMT must show: (1) a reasonable expectation of entering into a valid business relationship; (2) Profile's knowledge of this expectancy; (3) Profile's purposeful interference and defeat of this legitimate expectancy; and (4) damages. *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 886 (7th Cir. 2000). However, "[t]he interest protected by a tortious interference case is the reasonable expectation of an economic advantage." *Reuben H. Donnelley Corp. v. Brauer*, 655 N.E.2d 1162 (Ill. App. Ct. 1995). Here, SMT states only that it was "contemplating" entering sales relationships with several accounts that Profile got to first. That is not enough. *See Stefani v. Baird & Warner, Inc.*, 510 N.E.2d 65, 71 (Ill. App. Ct. 1987) (being one of a number of potential buyers not a reasonable expectation when seller could have accepted other offers). There are Illinois cases apparently standing for the proposition that it is enough to survive a motion to dismiss under Illinois procedure to "allege that a contractual arrangement with an identifiable third party [was] at least contemplated." *Heying v.*

-10-

*Simonaitis*, 466 N.E.2d 1137, 1141 (Ill. App. Ct. 1984). Illinois procedure is inapplicable here. *See Beul v. Asse Int'l, Inc.,* 233 F.3d 441, 449 (7th Cir. 2000) (federal procedure applies in federal court). On a summary judgment motion in federal court, SMT must bring forward enough evidence to persuade a rational jury that SMT had a reasonable expectation of a business relationship with some third party that would have been consummated but for Profile's unjustifiable interference. *D 56, Inc. v. Berry's Inc.,* 955 F. Supp. 908, 918 (N.D. Ill. 1997) (Coar, J.). There is no such evidence. Summary judgment is granted on this counterclaim as well.

VI.

Invoking Fed. R. Civ. P. 26(b)(4)(C), Profile asks for reimbursement for fees incurred in deposition testimony by its expert witness, Jeff Litvak of KPMG, who was deposed by SMT in May 2001, and for his associate who aided him in preparing the testimony. The Rule requires "the party seeking discovery [to] pay the expert a reasonable fee for time spent in responding to discovery" and "to pay the other party a fair portion of the fees and expenses reasonably incurred by the [other] party in obtaining facts and opinions from the expert."

The first issue here is whether SMT must pay for Litvak's preparation time for the deposition. The rule mandates such payments. *See Collins v. Village of Woodridge,* 197 F.R.D. 354 (N.D. Ill. 1999) (Kennelly, J.). "[I]t is entirely fair, and authorized

-11-

by Rule 26(b)(4)(C)(i) to require a party who seeks to depose an expert from whom he has received a written report . . . to pay the reasonable fees associated with the expert's time reasonably spent preparing for the deposition." *Id.* at 357-58. SMT argues that *Collins* is anomalous, and that the weight of authority in this District is to the contrary. It cites *Rhee v. Witco Chemical,* 126 F.R.D. 45, 47-48 (N.D. Ill. 1989), for the proposition that a party deposing the adverse expert should only have to pay if the case is complex, preparation is unusually extensive, or the deposition has been repeatedly postponed by the party seeking to take it. *Id.* at 47. If those circumstances do not apply, as they do not here, "compensation of plaintiff's expert for preparation time is inappropriate." *Id.* I agree with the *Collins* court, however. The Rule calls for compensation for "time spent in responding to discovery," and not just time spent at the deposition. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (Plain language governs in statutory interpretation.).

However, Litvak's requested expert fees are not reasonable. Including preparation time and the roughly two and a half hours of deposition time, they come to $14,240, and are billed at $475 per hour for Litvak and $395 per hour for his associate. The reasonableness of such fees is assessed considering the following factors: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3)

the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the local cost of living; and (6) any other factor likely to be of assistance in balancing the interests implicated by Rule 26. *McClain v. Owens-Corning Fiberglass Corp.*, No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996)(citing cases). Apart from the witness' area of expertise, Profile offers no evidence regarding any of these factors. The court in *McClain* rejected a $400 an hour fee for a physician in a complex asbestos case, and it is hard to believe that five years later, the time of a forensic accountant in Chicago is worth $475 an hour on a simple contract case. Profile gives me no reason to think that it is. The defendants suggest a figure of $250 an hour, which seems reasonable. Litvak may recover no more than that even for the deposition testimony. Litvak has offered no authority that would support paying an associate fee. The Rule says that the party seeking discovery must pay "the expert" for time reasonably spent in responding to discovery. No fees will be awarded for the associate's time.

Moreover, it is impossible to believe that this simple damages computation in an ordinary contract case required anything like the amount of preparation that Profile claims. To simply take the adverse party's unsupported word for the amount of preparation time involved in a matter like this is to hand it a tool of oppression

to misuse. I do not say that Profile deliberately abused the rights the Rule grants to recover for expert time reasonably spent in responding to discovery, but Profile fails to show that its request involved time reasonably spent. It may recover for two hours of Litvak's preparation time, but not his associate's, plus the time he actually spent giving deposition testimony.

VII.

I GRANT summary judgment for Profile on its claim I (declaration that the Agreement was validly terminated), and against SMT on its Counterclaim I (denying this). I GRANT summary judgment for Profile on SMT's Counterclaims III, VI, VII, VIII, IX (unopposed), and X. I GRANT Profile's motion in limine regarding exclusion of evidence of damages on Counterclaims II, IV, and V. SMT's unopposed motion to bar evidence of SMT's performance under contracts prior to the Agreement is GRANTED. I GRANT Profile's motion for reimbursement of the time its expert (but not his associate) spent in preparing for his deposition, but limit such fees, and those involved in giving the deposition, to $250 an hour. I allow for no more than two hours of preparation time.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: 7-31, 2001

-14-